SC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric John Meisner, ) | No. CV 09-8048-PCT-DGC (ECV) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Anders Rosenquist, et al., ) | |
| Defendants. ) | |

Plaintiff Eric John Meisner, who is confined in the Federal Correctional Institution in Fort Dix, New Jersey, has filed a *pro se* civil rights Complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and an Application to Proceed *In Forma Pauperis*. (Doc.# 1, 5.)[1] The Court will dismiss the Complaint without leave to amend.

**I.     Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $57.19. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according

---

[1] "Doc.#" refers to the docket number of filings in this case.

to the statutory formula.

**II.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Complaint will be dismissed without leave to amend because Plaintiff's claims cannot be cured by the allegation of additional facts.

**III.   Complaint**

Plaintiff alleges counts for "fraud and deceit joined by malpractice" based on federal question and diversity jurisdiction. He sues Anders Rosenquist, who is his appointed counsel on direct appeal from his federal conviction, and the law firm, Rosenquist & Associates. Plaintiff seeks injunctive, compensatory, and punitive damages.

**Criminal Case Background**

On September 9, 2004, a criminal complaint was filed against Plaintiff in CR04-1073-PCT-DGC, arising from a vehicle stop and subsequent search resulting in the discovery of illicit drugs on late September 6 and early September 7, 2004 in northern Arizona. Plaintiff was indicted on October 1, 2004. (Crim. Doc.# 17.) Plaintiff filed a motion to suppress evidence, which he supplemented in August, 2005. (Crim. Doc.# 32, 46.) On May 16, 2006, an evidentiary hearing was held on the motion to suppress. (Crim. Doc.# 110.) At the hearing, defense counsel explained:

> We have presented to a third expert a copy, our copy, in fact, of this tape, and he has had the copy of the tape as well as the two previous reports. And this examiner's name is Stuart Allen and I've given the government his curriculum vitae and some of his supporting material as well as a preliminary report he's issued indicating that he has reviewed the copies and he cannot

- 2 -

> really authenticate and cannot make a final determination as to whether or not the tape has been altered.
>
> I spoke with him yesterday and he advised me there were certain tests, digital tests as opposed to analog tests, that should have been performed by the last expert, Barry Dickey . . . that should have been performed by Mr. Dickey but were not performed by him.
>
> I had assumed, and it turns out wrongly so, that Mr. Dickey was performing all appropriate and necessary tests, which would include digital and analog. I'm now advised that he did not do the digital test. As well as I'm also advised that Mr. Dickey only reviewed a frame–by–frame analysis of ten minutes of what is approximately an hour and 20 minute tape. And this other expert tells me that it should have been a frame–by–frame analysis of the entire tape.

(Crim. Doc.# 110 at 129-30.) Defense counsel requested leave, at defense expense, to have the original videotape delivered to Allen for evaluation. (Id. at 130, 138.) The Court took the motion under advisement. (Id. at 138.)

On May 22, 2006, the Court denied the motion to have Allen examine the original videotape, concluding that the defense had "been afforded a reasonable opportunity to prepare a defense, including examination of the videotape by two defense experts, and that additional delay should not occur." (Crim. Doc.# 67 at 2.) The Court further observed that, "Defendant has had the videotape examined by two experts privately retained by his counsel. Neither expert could find evidence of editing or tampering. Defendant's desire to have yet another expert examine the videotape, at the risk of delay and additional cost to the Government, falls into the category of a 'fishing expedition.'" (Id. at 3.) The Court further found the tampering assertion implausible because:

> The videotape began recording when the DPS officer activated his lights and sirens to pull over Defendant's vehicle. The tape runs continuously until Defendant is taken into custody more than one hour later. The timer in the lower right-hand corner of the videotape runs continuously and without interruption from the initial activation of the lights and siren to the final arrest.

(Id.) The Court found the officer's testimony about the integrity of the videotape credible and Plaintiff's description of alleged omissions not credible. (Id. at 4.)

On July 31, 2006, Plaintiff entered a guilty plea to possession with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) before Magistrate Judge Voss pursuant to a plea agreement. (Crim. Doc.# 95.) In entering his guilty plea, Plaintiff expressly stated that he understood that he was waiving the right both to a direct appeal and

1 to collaterally attack any judgment of guilt or sentence. (Crim. Doc.# 93 at 6-7.) Magistrate Judge Voss issued Findings and Recommendation and recommended the plea agreement and Plaintiff's plea be accepted as knowingly, voluntarily, and intelligently made. (Crim. Doc.# 82.)

On November 6, 2006, this Court accepted Plaintiff's guilty plea with a decision on acceptance of the plea agreement deferred until sentencing. (Crim. Doc.# 87.) On December 5, 2006, Plaintiff moved to withdraw from the plea agreement against the advice of counsel claiming he had not understood "by the terms of the plea agreement he would be giving up his right to appeal and to file a motion for a Writ of Habeas Corpus."[2] (Crim. Doc.# 88.)

On December 11, 2006, the Court held a hearing on Plaintiff's motion to withdraw, which it then denied, and sentenced Plaintiff to 120 months in prison followed by 60 months on supervised release. (Crim. Doc.# 94, 111.) With respect to his motion to withdraw, Plaintiff repeated that he had not understood he had waived the right to appeal or collaterally attack his conviction by entering into the plea agreement. (Crim. Doc.# 111 at 6-7.) He stated that he wished to withdraw from the plea agreement, but enter a guilty plea, without

---

[2] The plea agreement specifically provided that:

> The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or information or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant, providing the sentence is consistent with this agreement. The **defendant further waives**: (1) **any right to appeal** the Court's entry of judgment against defendant; (2) **any right to appeal the imposition of sentence** upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) **any right to collaterally attack defendant's conviction and sentence** under Title 28, United States Code, Section 2255, **or any other collateral attack**. The **defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case.**

(Crim. Doc.# 95 at 4) (emphasis added).

waiving his appeal and collateral review rights, so that on appeal or collateral review he could raise a claim of ineffective assistance of trial counsel based on counsel's alleged failure to properly instruct the first two privately-retained defense experts who examined the videotape of Plaintiff's detention and arrest for tampering.[3] (Id. at 7, 11-12.) Plaintiff claimed that he did not learn until after he entered his guilty plea that his two defense experts had not performed all of the testing necessary to conclusively establish whether the videotape might have been altered. Plaintiff further stated that he only learned that information from the third defense-retained expert, Stuart Allen, in a report prepared by Allen and telephone conversations with Allen. (Id. at 7-8.)

The Court denied Plaintiff's motion to withdraw from the plea agreement. (Id. at 35.) The Court explained as follows:

> In the Ninth Circuit, the decision whether or not to allow a defendant to withdraw from a guilty plea is within the discretion of the trial court. A defendant has the burden of coming forward with fair and just reasons for the withdrawal of a guilty plea.
>
> The Ninth Circuit has said that withdrawal should be allowed liberally if fair and just reasons are presented.
>
> However, the Ninth Circuit has also said that fair and just reasons include an inadequate Rule 11 plea colloquy, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist at the time the guilty plea was made. And that standard has been set forth in a number of Ninth Circuit cases, including the <u>Davis</u> case, which is a 2005 decision from the Ninth Circuit.
>
> So the decision I need to make today is whether there's a fair and just reason to permit Mr. Meisner to withdraw from the guilty plea, and it's my conclusion that a fair and just reason has not been provided so I'm not going to permit you to withdraw from your guilty plea or withdraw from the plea agreement. And I want to state my reasons on the record.
>
> It seems to me there are two issues that need to be decided by me today. One is whether the waiver of your right to appeal and your right to collaterally attack the decision of the Court was knowing and voluntary. And I conclude that it was. You signed a plea agreement, Mr. Meisner, that was signed by you on July 31st, 2006. In that plea agreement you specifically waived your right to appeal my entry of judgment against you. You also specifically waived your right to collaterally attack your conviction and sentence on any basis at all, and you acknowledged that this waiver by you would result in a dismissal of any appeal or any collateral attack that you might make on a conviction or

---

[3] Plaintiff claims that the videotape was altered to delete portions of the stop.

the sentence in this case. And those terms are set forth on page 4 of your plea agreement.

In addition, in your plea agreement you represented that you had read the entire plea agreement, with the assistance of counsel and that you understood it.

You stated in your plea agreement that your entry of the guilty plea was on the terms and conditions set forth in the document. You asserted in writing that you were fully capable of understanding the terms and conditions of the plea agreement, that you were not under the influence of any drugs or alcohol or other depressant that would impair your ability to understand. And all of those representation were made in writing in the plea agreement, which I read over the weekend when I knew that you were going to seek to withdraw it. . . . I listened to the entire plea colloquy you had with Judge Voss on July 31st, 2006. During that discussion with Judge Voss you agreed at the beginning you would tell him if you did not understand anything. . . . he told you you could speak with your lawyer if you had any questions.

You told him that you had – and this was all under oath – that you had read the plea agreement, that you understood it, that you had discussed it with Mr. Manno and that you had signed it.

You told him that you understood you were giving up your right to appeal or to collaterally attack the judgment and sentence in this case. You confirmed to him under oath that you wanted to give up those rights. You were asked specifically if you were satisfied with the representation of Mr. Manno and you said yes, that you were.

Given what you said in the written plea agreement and what you said in that discussion with Judge Voss, as well as your statement today that you understood you were giving up these rights at the time, it's my conclusion that there was a knowing and voluntary waiver of your right to appeal and your right to collaterally attack my decision.

(Id. at 34-37.)

This Court went on to address the authenticity of the videotape. (Id. at 37.) The Court stated:

The second issue that you've raised concerns the authenticity of the tape and the issues raised by a third expert. I think the record is clear that you've had the tape examined, or your lawyer had the tape examined, by two experts before the suppression hearing.

At the suppression hearing you testified that you believed the tape was altered. You described what you recalled of the events that were no longer shown on the videotape that had been altered.

I addressed that issue in my order on the motion to suppress. I specifically found that the assertions you made about things left out of the videotape were not credible, that they weren't consistent with other things that were clearly captured in the videotape. I also noted that the videotape was

- 6 -

|   |   |
|---|---|
| 1 | continuous, that there was a digital time readout on the videotape from beginning to end, and articulated in my order the reasons that I did not credit your argument that the tape had been altered. |
| 2 | |
| 3 | During that hearing, your attorney raised the issue of submitting the tape to a third expert. And I wrote an order on that addressing the issue of whether or not I would allow a third expert to look at it and decided I would not, that two experts were enough. Those experts have not been able to conclude that it had been altered. |
| 4 | |
| 5 | |
| 6 | Now, whether or not you agree with those rulings, the fact is you knew about them. You knew about the issues that had been raised before you signed the plea agreement and before you attended the plea colloquy where you said you were willing to give up your right to appeal or collaterally attack the decision of the Court. And you said at the hearing in front of Judge Voss that you were satisfied with Mr. Manno's representation of you. |
| 7 | |
| 8 | |
| 9 | |
| 10 | Therefore, this issue about the videotape is not an issue that arose after the guilty plea. It was one that arose before the guilty plea that I believe you understood, that I had addressed, and therefore I conclude that it is not a fair and just reason for withdrawing from the plea agreement. |
| 11 | |
| 12 | I also want to note that the issue you're raising doesn't go to your guilt or innocence. It goes to the question of whether I should suppress the evidence found by the officer during the traffic stop. |
| 13 | |
| 14 | We had a very thorough hearing, I believe, on that issue, and it wasn't just my conclusion that the tape was not altered that led me to deny the motion to suppress. There were a number of other factors that were addressed, including my finding that the officers were credible when they testified at that hearing. And so I denied that motion to suppress, and that's really what's at issue in connection with the videotape. It's not the central issue of your guilt or innocence. |
| 15 | |
| 16 | |
| 17 | |

18 (Id. at 37-39.) The Court went on to sentence Plaintiff to 120 months in prison followed by

19 60 months on supervised release. (Id. at 42-44; Cr. Doc.# 92, 94.)

20       Plaintiff filed a notice of appeal and was appointed counsel on appeal. (Ninth Circuit

21 Case # 07-10008, doc.# 13.) That attorney filed an opening brief, and then was granted leave

22 to withdraw. (Id., doc.# 20, 28, 34.) Substitute counsel was appointed, who also moved to

23 withdraw. (Id., doc.# 35, 37.) That attorney's first motion to withdraw was denied, but the

24 opening brief was stricken and a new deadline set for briefing the appeal. (Id., doc.# 41.)

25 A renewed motion to withdraw was granted and Mr. Rosenquist was appointed to represent

26 Plaintiff on appeal. (Id., doc.# 51, 57.) Rosenquist was ordered to file a notice indicating

27 whether he wished to have the previous opening appellate brief refiled or to file a new

28 appellate brief. (Id., doc.# 51.) On March 18, 2008, Rosenquist filed a notice to have the

stricken opening appellate brief refiled, but Plaintiff was granted leave to file a supplemental brief. (Id., doc.# 57, 59.) Plaintiff then filed a motion to strike the opening brief, remove counsel, stay proceedings, and proceed pro se. (Id. at doc.# 60.) The prior order was vacated and Rosenquist was ordered (1) to consult with Plaintiff and file a response to Plaintiff's pro se motion to strike the opening brief, remove counsel, stay proceedings, and proceed pro se; and (2) to inform the court whether Rosenquist still wished to proceed with the opening brief and excerpts already filed or if he wished to file a new opening brief and excerpts and have the court strike the existing brief and excerpts. (Id. at doc.# 61.) Rosenquist filed a notice indicating that he wished to proceed on the already-filed appellate brief. (Id., doc.# 66.) Subsequently, the Ninth Circuit denied Rosenquist's motion to withdraw. (Id., doc.# 81.) The appeal remains pending.

**IV.    Failure to State a Claim Pursuant to Bivens**

To state a Bivens claim, a plaintiff must allege that persons acting under color of federal law violated his constitutional rights. Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)). Thus, an action under Bivens is identical to one brought pursuant to 42 U.S.C. § 1983 except for the replacement of a state actor under § 1983 by a federal actor under Bivens. Id. "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk County v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Whether an attorney representing a criminal defendant on appeal is privately retained, a public defender, or court-appointed counsel, he does not act under color of state law. See Polk County, 454 U.S. at 317-18, 325; Miranda v. Clark County, Nevada, 319 F.3d 465, 468 (9th Cir. 2003) (*en banc*). Just as an attorney does not act under color of state law in representing a criminal defendant in state court proceedings, an attorney does not act under color of federal law in representing a criminal defendant in federal proceedings. Cox v. Hellerstein, 685 F.2d 1098, 1099 (9th Cir. 1982). Therefore, a Bivens action cannot be maintained against an appointed lawyer, even one employed by the federal government,

because he does not act under color of federal law. See Polk County, 454 U.S. at 317-18; Haley v. Walker, 751 F.2d 284, 285 (8th Cir. 1984); Cox, 685 F.2d at 1099.

Plaintiff sues the Defendants based solely on their representation of Plaintiff on his direct appeal. Because neither of the Defendants acted under "color of federal law," Plaintiff cannot state a Bivens claim against them. Plaintiff cannot cure this defect by amendment. Because Plaintiff fails to state a claim under Bivens and that defect cannot be cured by amendment, his Bivens claim will be dismissed with prejudice.

## V.   **Failure to State a Claim Under State Law**

Plaintiff also alleges violations of state law against the Defendants for "fraud and deceit joined by malpractice" in connection with the pending direct appeal filed in the Ninth Circuit.[4] Plaintiff contends that Rosenquist "concealed" plain error under Rule 52(b) of the Federal Rules of Criminal Procedure by refusing to raise particular issues on appeal that Plaintiff believes have merit. (Doc.# 1 at 7.) Specifically, Plaintiff claims that he did not receive Allen's report or know that Allen believed that additional tests on the original videotape could determine whether the video had been altered until after he entered his guilty plea. (Id. at 8-9.) Plaintiff further contends that Rosenquist knew that Plaintiff claimed that he did not receive Allen's report until after he entered his guilty plea. (Id.) On this basis, Plaintiff asserts that Rosenquist's failure to raise this issue on direct appeal constituted a fraud on the Court of Appeals and constituted concealment of "plain error" under Rule 52(b), as well as malpractice.

### A.    **Malpractice**

Under state law, a prerequisite to a legal malpractice claim for representation in a criminal case is reversal of the conviction. Glaze v. Larsen, 83 P.3d 26, 35 (Ariz. 2004) ("a malpractice claim, even one arising from actions or omissions early in the representation, does not accrue until all appeals are complete.") Because Plaintiff's conviction has not been reversed and his direct appeal is pending, any claim against appellate counsel in his criminal

---

[4] Rosenquist filed a motion to withdraw from representation, which was denied in an Order filed on April 1, 2009. See Ninth Circuit Case #07-10008, doc.# 81.

- 9 -

proceedings for malpractice has not yet accrued and will be dismissed.

**B.     Fraud**

To state a claim for common law fraud, a plaintiff must allege (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. Taiger v. Catholic Family & Comty. Servs., 995 P.2d 721, 730 (Ariz. App. 1999).

In denying Plaintiff's motion to withdraw from his guilty plea, this Court expressly noted that even if Plaintiff had not reviewed Allen's report prior to entering his guilty plea on July 31, 2006, Plaintiff had known by at least May 2006 that Allen had indicated that additional tests could be performed that might reflect alterations, if Allen were provided the original videotape. The issue was extensively discussed during the hearing on the motion to suppress, which is quoted at length above. Appellate counsel is not required to raise every non-frivolous claim on appeal. Jones v. Barnes, 463 U.S. 745, 752-54 (1983) (an indigent defendant does not have a constitutional right to compel appointed appellate counsel "to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."). Rosenquist's decision not to include the issue raised here by Plaintiff, even if the issue is not frivolous and the claim asserted by Plaintiff was not belied by the record, does not constitute a fraud on the appellate court.

Plaintiff also contends that Rosenquist perpetrated a fraud on the appellate court by failing to urge an issue raised in a supplemental brief filed by trial counsel before Plaintiff entered his guilty plea, Crim. Doc.# 46. In the supplemental brief, which was filed on August 25, 2005, trial counsel argued the officer who initially stopped Plaintiff for speeding made a mistake of law in believing the speed limit at the pertinent location was 55 miles per hour, rather than 65 miles per hour, and that, accordingly, the officer lacked a reasonable suspicion to pull Plaintiff over. (Doc.# 1 at 11, referring to Crim. Doc.# 46 at 3-5.) As

discussed above, Rosenquist is not required to raise every claim, even if not frivolous. Rosenquist's decision not to raise this issue on direct appeal does not constitute a fraud.

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis,* filed on May 11, 2009 (Dkt. #5), is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $57.19.

(3) The Complaint (doc.# 1) is **dismissed** for failure to state a claim without leave to amend.

(4) The Clerk of Court must enter a judgment of dismissal of this action with prejudice that states that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

DATED this 26th day of June, 2009.

David G. Campbell
United States District Judge